IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RALPH B. EPSTEIN, M.D.** | : | |
| | : | |
| v. | : | CIVIL NO. L-00-1698 |
| | : | |
| **BERKSHIRE LIFE INSURANCE COMPANY** | : | |

### MEMORANDUM

Now pending before the Court is Defendant's Motion for Summary Judgment, filed March 29, 2001. For the reasons stated below, the Court hereby DENIES Defendant's Motion.

I.  **Facts**:

This case arises out of five disability income policies issued by Defendant Berkshire Life Insurance Company ("Berkshire) to Plaintiff Dr. Ralph Epstein. The policies provide for benefits in the amount of $8,300 per month in the event that Dr. Epstein becomes totally disabled under the terms and conditions thereof. Additionally, each policy includes a Residual Disability Rider, which provides for payments of partial benefits in the event that Dr. Epstein's income is reduced as a result of a residual disability.

In October 1995, Dr. Epstein underwent a single vessel bypass surgery. Following the surgery, Dr. Epstein suffered pericarditis, which, he alleges, caused him to become partially disabled under the terms of the policies. After paying residual disability benefits to Dr. Epstein for six months, Berkshire stopped making residual disability payments to him.

On March 31, 2000, Dr. Epstein filed suit in the Circuit Court for Baltimore County

against Berkshire, alleging the following counts: (i) breach of contract, (ii) fraud, (iii) negligent misrepresentation, and (iv) declaratory judgment. On June 9, 2000, Berkshire removed the case to this Court on diversity of citizenship grounds, pursuant to 28 U.S.C. §1332. On March 29, 2001, prior to the close of discovery, Defendant moved for summary judgment on the grounds that Plaintiff's claims are time barred under Maryland law ("First Motion"). On May 23, 2001, the Court granted Plaintiff's Motion for a Continuance Pursuant to FRCP 56(f), thereby postponing a ruling on Defendant's Motion for Summary Judgment until after the close of discovery. The discovery cut-off date was December 15, 2001. On December 31, 2001, Defendant filed a second Motion for Summary Judgment ("Second Motion").[1]

Although the case was referred to United States Magistrate Judge Bredar for all further proceedings, including trial, the undersigned will rule on the Motion for Summary Judgment, filed March 29, 2001.

II.     **Summary Judgment Standard**:

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial.). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in

---

[1] Because the arguments included in Defendant's Second Motion do not overlap with the arguments contained in the First Motion, the Court will only rule on the First Motion at this time.

the light most favorable to the non-moving party. <u>Pulliam Inv. Co. v. Cameo Properties</u>, 810 F.2d 1282, 1286 (4th Cir. 1987).

III.   **Discussion**:

In its Motion for Summary Judgment, Defendant contends that Plaintiff's breach of contract, fraud, and negligent misrepresentation claims are time-barred. Under Maryland law, a cause of action for breach of contract, fraud, and negligent misrepresentation must be filed within three years from the date it accrues. Md. Code Ann. Cts. & Jud. Proc. §5-101; <u>see also</u> <u>Poffenberger v. Risser</u>, 431 A.2d 677 (Md. 1981). A cause of action accrues at the time the plaintiff knew or should have known of the breach. <u>Id.</u>

   A.   **Breach of contract claim**:

      1.   **Maryland statute of limitations**:

Defendant argues that Plaintiff's breach of contract claim began to accrue on September 16, 1996, the date on which Berkshire issued a "denial of benefits" letter to Dr. Epstein. Defendant reasons that Dr. Epstein had until September 16, 1999, to file suit. As stated above, however, Dr. Epstein did not file suit until over six months later, on March 31, 2000.

Plaintiff counters that there is a material factual dispute regarding the date on which Dr. Epstein knew or should have known that Berkshire had issued a final denial of his claim. Specifically, Dr. Epstein states in his affidavit that he did not understand the September 16th letter to be a final denial of his claim. In support, Dr. Epstein points to the following language in the September 16th letter, indicating that Berkshire's decision was not necessarily final:

> [u]pon review of the information furnished to date, we find that it appears you are not experiencing a sufficient disability related loss of income as required by the policy. Under the circumstances, we regret it appears we are unable to be of further assistance to you <u>at this time</u>. Our decision, of course, has been based upon the information presently at hand. As such, <u>we would be pleased to review any additional details you or your physician care to submit that may have an</u>

<u>impact on our consideration</u>. . . . We regret that we could not write to you more favorably <u>at this time</u>. . . .

Plaintiff's Opposition Memorandum, Exhibit G (emphasis added).

In response to the "denial of benefits letter," between October 1996 and March 1999, Dr. Epstein engaged in further discussions with Berkshire and submitted more information to Berkshire regarding his claim.[2] Dr. Epstein contends that the ongoing discussions and uncertainty regarding the disposition of his claim were sufficient to toll the running of the statute of limitations.

The Court concludes that the ongoing dialogue between Dr. Epstein and Berkshire subsequent to the September 16th letter regarding the viability of his claim was sufficient to toll the running of the statute of limitations. Accordingly, Plaintiff's claim for breach of contract is not barred by the Maryland statute of limitations.

2. **Time Limitations Included in the Disability Policies**:

Defendant also contends that Dr. Epstein's breach of contract claim is barred by the terms of the disability policies. Specifically, each policy contains the following provision that "[n]o such action [at law or in equity] may be brought after three years from the time that written proof of loss is required to be furnished." Based upon the terms of each policy, proof of loss must be

---

[2] These discussions and submissions included, <u>inter alia</u>: October 30, 1996, Dr. Epstein's accountant submitted financial statements to Berkshire, <u>see</u> Plaintiff's Memorandum, Exhibit I; December 1996, Berkshire hired auditors to examine Dr. Epstein's finances, <u>see id.</u> at Exhibit J & K; February 1997, Berkshire's auditors met with Dr. Epstein, <u>see id.</u> at Exhibit L; March 28, 1997, Berkshire sent Dr. Epstein the results of its auditors' report, <u>see id.</u> at Exhibit N; June 18, 1997, Dr. Epstein met with Berkshire representatives to discuss the auditors' reports, <u>see id.</u> at Exhibit O; July 7, 1997, Dr. Epstein submitted a letter to Berkshire regarding the meeting, <u>see id.</u> at Exhibit P; October 23, 1997, Berkshire proposed to settle Dr. Epstein's claims for $25,000, in exchange for Dr. Epstein's release of his residual disability riders, <u>see id.</u> at Exhibit Q; January 27, 1999, letter from Dr. Epstein's lawyer to Berkshire regarding Dr. Epstein's offer to settle his claims for $100,000, <u>see id.</u> at Exhibit R; March 2, 1999, letter from Berkshire to Dr. Epstein's lawyer, stating that it has received no information.

received at Berkshire's home office within 90 days if "reasonably possible." In the event that it is not "reasonably possible" to provide proof of loss within 90 days, it must be furnished within one year.

Defendant contends that the 90 day deadline is applicable in this case,[3] thereby requiring Plaintiff to have provided a proof of loss by December 15, 1996, and to have filed suit by December 15, 1999. Accordingly, Defendant concludes, Plaintiff's filing of suit on March 31, 2000, falls outside the time limitation imposed by the disability policies. Plaintiff counters that, based on the language of the policy, he had one year to file a proof of loss, thereby allowing him to bring suit under the policy at any time up and until September 16, 2000.

Because Defendant has failed to prove or explain why the 90-day deadline instead of the one-year deadline is applicable to this case, the Court finds that there is a genuine issue of material fact over which deadline applies. Accordingly, the Court DENIES this portion of Defendant's Motion without prejudice to refiling as a supplement to Defendant's Motion for Summary Judgment, filed December 31, 2001.

B.    **Fraud and Negligent Misrepresentation Claims**:

In his Complaint, Dr. Epstein alleges claims of fraud and negligent misrepresentation against Berkshire. Specifically, Dr. Epstein asserts that Berkshire made false representations of material fact to him and that he relied on such representations when purchasing five disability policies.

In its Motion for Summary Judgment, Defendant contends that the allegedly false representations were made between 1977 and 1992, the years in which Berkshire issued Plaintiff's policies, and the alleged "wrong" occurred on or about September 16, 1996.

---

[3]    Defendant fails to explain why the one-year deadline is inapplicable in this case, but instead, merely concludes that the facts do not meet this "standard."

Accordingly, Defendant argues, these claims are barred by Maryland's three-year statute of limitations. As discussed supra Part III.A.1, there is considerable dispute over whether the September 16th letter was sufficient to put Dr. Epstein on notice of an actionable wrong because there was an ongoing dialogue between Dr. Epstein and Berkshire over the coverage of his claim. Accordingly, there is a material factual dispute regarding when Dr. Epstein knew or should have known about Berkshire's alleged false representations, and the Court concludes that Plaintiff's claims of fraud and negligent misrepresentation are not time-barred.

IV    **Conclusion**:

For the foregoing reasons, the Court shall, by separate Order, DENY Defendant's Motion for Summary Judgment.

It is so ORDERED this 21st day of March, 2002.

_____
Benson Everett Legg
United States District Judge